FILED
2019 May-08 PM 04:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| BAMA ICEE LLC, *et al.,* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | 7:18-cv-01327-LSC |
| ) | |
| J & J SNACK FOODS CORP., ) | |
| *et al.,* ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OF OPINION

Before this Court are Defendants, J & J Snack Foods Corp., The ICEE Company Inc., and ICEE of America ICEE of America, Inc. (collectively "Defendants'"), Amended Motions to Dismiss. (Docs. 35 & 36). Plaintiffs have timely filed their opposition. The motions are fully briefed and ripe for review. For the reasons stated below, Defendants' Amended Motions to Dismiss (docs. 35 & 36) are due to be granted in part and denied in part.

I.   **BACKGROUND**[1]

The claims before this Court represent another episode in a saga of litigation surrounding the use of the ICEE trademark in the southeast. While the plaintiffs

---

[1] In evaluating a motion to dismiss, the Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012). The following facts are, therefore, taken from Plaintiffs' allegations contained in the Amended Complaint, and the Court makes no ruling on their veracity.

have varied, the claims before this Court are certainly not novel. *See ICEE Distributors, Inc. v. J&J Snack Foods*, 325 F.3d 586 (5th Cir. 2003) ("*ICEE Distributors I*")*; ICEE Distributors, Inc. v. J&J Snack Foods*, 445 F.3d 841 (5th Cir. 2006) ("*ICEE Distributors II*") (collectively the "Louisiana" cases) (enjoining J & J Snack Foods Corp.'s sale of ICEE branded squeeze up pops in a competitor's exclusive sales territory); *ICEE of Atlanta Inc. v. J & J Snack Foods Corp,* No. 1:02-cv-00214-HTC, 2005 WL 8154314, at * 1 (N.D. Ga. Jan. 21, 2005) (the "Georgia" case) (entering an Agreed Final Judgment regarding J & J Snack Foods Corp's sale of ICEE branded products in a competitor's exclusive sales territory); *ICEE of America, Inc. v. Mid-American ICEE Corporation, et al.,* No. 3:02-cv-364-L, 2005 WL 2415940, at *6 (N.D. Tex. Sept. 29, 2005) (the "Texas" case) (action by ICEE of America, Inc. seeking a declaratory judgment concerning the rights and responsibilities under ICEEQUIP licensing agreements).

The ICEE trademark was developed in the 1960s when the owner of Dairy Queen discovered that his refrigerator had partially frozen some soda bottles. After this discovery, the ICEE trademark was registered by John E. Mitchell Company and its wholly owned subsidiary, ICEEQUIP Corporation. Initially, the ICEEQUIP Corporation held the ICEE trademark in its entirety. In the 1970s, ICEEQUIP Corporation began to issue substantially similar ICEE trademark licenses to various

regional distributors for the exclusive use of the ICEE trademark in specific sales territories, referred to as marketing areas. These licenses gave each distributor an exclusive right to sell products using the ICEE mark in certain marketing areas for the life of the mark. Pursuant to these licensing agreements, ICEEQUIP Corporation agreed to not license the use of the ICEE trademark in the marketing areas of the licensee to any other distributor.

In 1983, ICEEQUIP Corporation went out of business. The existing ICEE regional distributors, who had licenses pursuant to these trademark agreements, formed Defendant ICEE of America, Inc.(" IOA") and acquired legal title to the ICEE mark in order to maintain and protect it. Although IOA continued the prior licensing agreements between ICEEQUIP and the existing regional distributors, it became the record owner of the ICEE trademark.

Plaintiffs, Bama ICEE and Bama ICEE Southern LLC (collectively "Plaintiffs" or "Bama ICEE"), have the exclusive right to sell ICEE branded products in several counties in Alabama and Georgia through one of these licensing agreements with IOA.[2] Defendant The ICEE Company Inc. ("TIC"), a wholly

---

[2] Plaintiffs' exclusive sales territory in Alabama includes: Autauga, Barbour, Bibb, Bullock, Butler, Calhoun, Clay, Chambers; Chilton, Cleburne, Coffee, Coosa, Covington, Crenshaw, Dale, Dallas, Elmore, Fayette, Greene, Hale, Henry, Houston Jefferson, Lamar, Lee, Lowndes, Macon, Marengo, Marion, Montgomery, Perry, Pickens, Pike, Randolph, Russell, Shelby, St. Clair, Talladega, Tallapoosa, Tuscaloosa, Walker, Wilcox, and Winston. Plaintiffs' exclusive

owned subsidiary of Defendant J & J Snack Foods Corp ("J & J"), also has the exclusive right to sell ICEE trademarked products in certain marketing areas through a substantially similar trademark license agreement with IOA. Collectively, J & J and TIC own the exclusive right to sell ICEE branded products in a majority of territories across the United States.

This ICEE trademark litigation centers on J & J's sale, pursuant to TIC's license, of products bearing the ICEE trademark, including an alleged imitation frozen carbonated beverage ("FCB") Artic Blast, within Plaintiffs' exclusive territory. Specifically, Plaintiffs allege that J & J is selling ICEE branded products such as popsicles, squeeze candies, and "slush" pouches both directly and through third parties to retailers like Sam's Club, Target, Walmart, Publix, Winn-Dixie, and Piggly Wiggly located in Plaintiffs' exclusive sales territory. Plaintiffs contend that IOA, for its part, is approving and supporting J & J's sales of both trademarked ICEE products and the imitation Artic Blast FCB under the ICEE trademark in Plaintiffs' exclusive sales territory.

Plaintiffs contend that J & J employees are driving delivery trucks marked with the ICEE trademark and wearing uniforms with the ICEE trademark while selling and delivering ICEE branded and the alleged imitation Artic Blast FCB

---

sales territory in the following Georgia counties: Chattahoochee, Clay, Early, Harris, Muscogee, Quitman, Seminole, Stewart, and Troup. (Doc. 29 ¶ 1.)

products in Plaintiffs' exclusive sales territory. Plaintiffs also allege that J & J is delivering the imitation Artic Blast FCB syrup in boxes bearing the ICEE trademark along with cups and other signage for the seller's use that bear the ICEE trademark. Finally, J &J's website, http://www.icee.com/store-locator-page/, is alleged to have a store locator that allows customers to find locations in Plaintiffs' exclusive sales territory where they can buy "ICCE or Artic Blast" from J & J.

## II. STANDARD

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). However, in order to withstand a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), a complaint "must plead enough facts to state a claim to relief that is plausible on its face." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347–48 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stated another way, the factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). A complaint that succeeds in "identifying facts that are

suggestive enough to render [the necessary elements of a claim] plausible" will survive a motion to dismiss. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* If the pleading "contain[s] enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory,'" it satisfies the notice pleading standard. *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683–84 (11th Cir. 2001)).

### III. DISCUSSION

Plaintiffs bring claims against Defendants for (1) Trademark Infringement, (2) Trademark Dilution, (3) Breach of Contract, (4) Tortious Interference with Existing Contracts and Business Relationships, (5) Civil Conspiracy, (6) Breach of

Duty of Good Faith and Fair Dealing, (7) Negligence/Wantonness, and (8) Trademark Cyberpiracy. Defendants have moved to dismiss all claims except for breach of contract. (Docs. 35 & 36.)[3]

   a. **TRADEMARK INFRINGEMENT**

"To prevail on a trademark infringement claim under the Lanham Act, a party must prove that (1) it owns a valid and protectable mark, and (2) the opposing party's use of an identical or similar mark is likely to cause confusion." *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1080 (11th Cir. 2016) (citing *Gift of Learning Found., Inc. v. TGC, Inc.*, No. 01–08069–CV–DTKH, 2001 WL 34718642, at *1 (S.D. Fla. 2001), *aff'd*, 329 F.3d 792, 797 (11th Cir. 2003) (per curiam)); 15 U.S.C. § 1114(1)(a).

Prior cases within the Eleventh Circuit have found cognizable trademark infringement claims when "identical goods [are] sold in an unauthorized manner" because they are not considered "genuine" for the purposes of the Lanham Act. *Caterpillar, Inc. v. Nationwide Equip.,* 877 F. Supp. 611, 615 (M.D. Fla. 1994) (internal quotation marks omitted); *See Hibbett Sporting Goods, Inc. v. Socks & Accessory Brands Global Inc.,* No. 2:17-cv-01029-RDP, 2018 WL 582436, at *2–3 (N.D. Ala. 29, 2018)("[G]oods manufactured by agreement with the holder of a

---
[3] Although Defendants' briefs are separate, they present substantially similar arguments. Therefore, the Court refers to Defendants' motions jointly when referencing Defendants' arguments.

trademark, but distributed without the holder's authorization, are not considered genuine for purposes of trademark protection.")

Plaintiffs allege that J & J has and continues to market, advertise, and sell both ICEE branded products and imitation products in Plaintiffs' exclusive territory without Plaintiffs' permission. As part of these efforts, J & J is alleged to be selling, delivering, and marketing imitation products like Artic Blast FCB both under and alongside the ICEE trademark. Based on these facts, Plaintiffs have plausibly alleged the sale of non-genuine goods with resulting consumer confusion in that the buyer of an FCB product like Artic Blast would be led to believe that it was an ICEE product, not an imitation.

Defendants argue there can be no possible consumer confusion because J & J's sales of imitation products are in fact the sale of a "genuine" product under Trademark law because IOA, the holder, has approved the use.[4] *See ICEE Distributors II*, 445 F. 3d at 845–46 ("[T]rademark law does not apply to the sale of genuine goods bearing a true mark..."); *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc. of Lafayette*, 988 F.2d 587 (5th Cir. 1993). Plaintiffs, however, insist that they have plausibly alleged sales of non-genuine goods because IOA is not

---

[4] Defendants do not contest that Plaintiffs have standing to bring a trademark infringement claim. Prior decisions interpreting these ICEEQUIP agreements interpreted them as conferring standing on Plaintiffs to sue specifically for trademark infringement because the agreements specifically assign the right to bring a trademark claim to the licensee. *See ICEE of Atlanta*, 2005 WL 8154314, at *5; *Barnes v. v. J&J Snack Foods,* No. 3:02-CV-24 (E.D.Tenn. 2003).

authorized to approve such sales under the agreement between the parties. Because the full agreement between the parties is not before the Court, the Court cannot determine this issue at this time. Accordingly, Defendants' motions are denied and the Court will address this issue if raised in an appropriately filed motion for summary judgment.

### b. TRADEMARK DILUTION

15 U.S.C. § 1125(c) provides, in part, that:

> the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

Defendants argue that Plaintiffs lack "standing" to bring a claim under § 1125(c) because they are not the "owners" of the mark. However, Plaintiffs have alleged sufficient facts to plausibly indicate they have standing. Plaintiffs have alleged that they had the exclusive right to sell ICEE branded products in their sales territory and that IOA and J & J's actions diluted and possibly tarnished the mark in which they held an "ownership" interest. Defendants' argument as to whether Plaintiffs are "owners" within the meaning of the statute in this instance is more appropriately addressed at summary judgment where the Court can receive

evidence to assess the full extent of the rights to the ICEE trademark that Plaintiffs were granted pursuant to the licensing agreements.

### c. Cybersquatting

Plaintiffs style their Anticybersquatting Consumer Protection Act ("ACPA") claim as a claim for cyberpiracy. However, the pleadings make clear that their claim is actually one for cybersquatting brought pursuant to 15 U.S.C. § 1125(d), which is the ACPA. The ACPA states, in part, that:

> (1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—
>
> > (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
> >
> > (ii) registers, traffics in, or uses a domain name that—
> >
> > > (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
> > >
> > > (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
> > >
> > > (III) is a trademark, word, or name protected by reason of section 706 of title 18 or section 220506 of title 36. . . .

15 U.S.C. § 1125(d)(1)(A).

Plaintiffs have alleged sufficient facts to maintain their Anti-Cybersquatting claim in that they have alleged that TIC uses J & J's website "http://www.icee.com/store-locator-page/" to mislead customers and make them buy J & J's products, including the imitation Artic Blast, in areas where the Plaintiffs' have the exclusive right to sell ICEE products. (Doc. 1-1 ¶37 n.10.) To the extent Defendants again argue that Plaintiffs do not have "standing" to bring this claim, the Court notes that such an argument is more appropriately addressed in this case at summary judgment when the Court may consider evidence of and the effect of the licensing agreement. Therefore, Defendants' motions as to this claim are due to be denied.

### d. BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

Contracts carry an implied obligation of good faith and fair dealing, i.e. "an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." *Lloyd Noland Found., Inc. v. City of Fairfield Healthcare Auth.*, 837 So. 2d 253, 267 (Ala. 2002) (quoting *Seller v. Head*, 73 So.2d 747, 751 (1954)) (internal quotation marks omitted). "A breach of [an] implied promise [not to hinder performance of the contract's terms by the other party] may be construed as an

actual breach of the contract, thereby giving the other party a cause of action on the contract." *Eager Beaver Buick, Inc. v. Burt*, 503 So. 2d 819, 822 (Ala. 1987), *overruled on other grounds*, *Elmore Cty. Comm'n v. Ragona*, 540 So. 2d 720 (Ala. 1989). Alabama law does "not recognize a bad faith claim under contract law absent a breach of a specific term of the contract." *Lake Martin/Ala. Power Licensee Ass'n, Inc. v. Ala. Power Co., Inc.*, 601 So. 2d 942, 944 (Ala. 1992). Moreover, Alabama law does not recognize a tort claim "for breach of the duty of good faith [and fair dealing] outside the insurance context." *Wallace v. SunTrust Mortg., Inc.*, 974 F. Supp. 2d 1358, 1368 (S.D. Ala. 2013).

Plaintiffs allege that IOA actively interfered with its trademark licensing agreement by allowing and assisting J & J to sell ICEE branded products, whether genuine or imitation, in Plaintiffs' exclusive sales territory. Specifically, Plaintiffs allege that this violates the exclusiveness provision of the licensing agreement, which "grants Bama ICEE the exclusive license to use any and all the ICEE Trademarks… in a specific defined geographic area, including Tuscaloosa County." (Doc. 29 ¶ 18.) Therefore, Plaintiffs have alleged facts plausibly indicating there was a specific provision in the agreement between the parties that granted Plaintiffs an exclusive right to sell ICEE branded products in a specific sales territory, and that IOA intentionally frustrated this provision by authorizing

the sale of competing products in Plaintiffs' exclusive sales territory. Thus, Plaintiffs' claim for breach of covenant of good faith and fair dealing may proceed.[5] While it may ultimately be proved that this provision in the contract eliminates the need for Plaintiffs' to rely on a "nebulously hover[ing] implied covenant" of a duty of good faith and fair dealing, this Court cannot at this time conclude that this claim is duplicative to Plaintiffs' breach of contract claim. *See Lake Martin/Ala. Power Licensee Ass'n, Inc.*, 601 So. 2d at 945.

### e. TORTIOUS INTERFERENCE

To prove a tortious interference with business relationships claim, the plaintiff must show: "(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *White Sands Group, L.L.C. v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009).

Upon review, Plaintiffs have alleged sufficient facts to indicate the existence of existing protectable business relationships with vendors and other customers that IOA and J & J were aware of and subsequently interfered with by selling competing products. Therefore, Plaintiffs' claim for tortious interference is not due to be dismissed.

---

[5] Plaintiffs do not oppose dismissing its claims for breach of covenant of good faith and fair dealing as to J& J and TIC. (Doc. 41 at 18 n.16.) Therefore, these claims are dismissed against J&J and TIC. To the extent, Plaintiffs bring such a claim in tort it is also due to be dismissed.

### f. NEGLIGENCE/WANTONNESS

Plaintiffs bring a claim for negligence/wantonness based on Defendants' alleged failure to comply with both the injunction from the Louisiana cases and the Agreed Final Judgment from the Georgia case. Plaintiffs claim that IOA and J & J specifically owed them a duty to act reasonably in complying with both court orders. The Court was unable to locate any case law indicating that Alabama recognizes a negligence or wantonness cause of action for failing to comply with an injunction or court ordered settlement, or that this Court should construe the law to create one. *See Hazewood v. Foundation Financial Group, LLC.,* No.07–0171–WS-B, 2007 WL 1975446, at * 6  n.8 (S.D. Ala. July 2, 2007) ("This Court is not empowered to cut from whole cloth a new Alabama tort."). Thus, Plaintiffs' claim for negligence/wantonness is due to be dismissed.

### g. CIVIL CONSPIRACY

Civil Conspiracy requires "(1) concerted action by two or more persons (2) to achieve an unlawful purpose or a lawful purpose by an unlawful means." *Ex Parte Alamo Title Co.,* 128 So.3d 700, 713 (Ala. 2013). Plaintiffs allege that IOA, as a separate entity from J & J and TIC, conspired with J & J to dilute the value of Plaintiffs' license by tortiously interfering with its business relationships. Plaintiffs allege that the conspiracy between IOA and J & J was carried out and furthered by

Gerald Shreiber, Daniel Fachner and others. (Doc. 29 ¶¶ 71-72.) Both Shreiber and Fachner are alleged to be agents of both entities. Accordingly, Defendants argue that Plaintiffs' civil conspiracy claim is barred by the intra-corporate conspiracy doctrine. Determining, based on the facts alleged, that the intra-corporate conspiracy doctrine applied at this stage would be premature.[6] Therefore, Plaintiffs' civil conspiracy claim may proceed at this time.

### h. BAMA ICEE SOUTHERN LLC

Defendants have also moved for the dismissal of Bama ICEE Southern LLC on the grounds that have not stated a claim for relief. Upon review, Plaintiffs have alleged sufficient facts such that Bama ICEE Southern LLC is able to maintain a claim for tortious interference with business relationships. Accordingly, Bama ICEE Southern LLC is not due to be dismissed.

### i. COUNTERCLAIM

TIC has sought leave of the Court to add a counterclaim against Plaintiffs, including Bama ICEE Southern LLC. (Doc. 49.) Plaintiffs do not oppose the Motion. (Doc. 51.) Therefore, the Motion (doc. 49) is due to be granted. TIC is

---

[6] Plaintiffs' brief in opposition to Defendants' Amended Motions to Dismiss asserts that TIC is the sole shareholder of IOA, indicating that IOA and TIC may not in fact be separate entities. (*See* Doc. 41 at 1 n. 1.)("TIC, which is an ICEE distributor, is the wholly owned subsidiary of J&J. ICEE of America, Inc., which purports to be the registered owner of the ICEE trademarks, has only one shareholder—TIC.") Without this factual allegation before the Court in Plaintiffs' Amended Complaint, this Court cannot consider it at the motion to dismiss stage.

instructed to file its counterclaim along with its answer to Plaintiffs' amended complaint.

## IV. CONCLUSION

For the reasons stated above, Defendants' Amended Motions to Dismiss (docs. 35 & 36) are due to be granted in part and denied in part. Plaintiffs' claim for negligence/wantonness is due to be dismissed. Plaintiffs' claims for Trademark Infringement, Trademark Dilution, Breach of Contract, Tortious Interference with Existing Contracts and Business Relationships, Civil Conspiracy, Breach of Duty of Good Faith and Fair Dealing, and Trademark Cyberpiracy remain pending. Defendants will have fourteen (14) days from the date of this Opinion to answer Plaintiffs' Amended Complaint. An order consistent with this opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on May 8, 2019.

L. Scott Coogler
United States District Judge

195126